■ ARLETTE PERSAUD, Respondent-Appellant, v IAN PERSAUD, Appellant-Respondent.—Mikoll, J. Cross appeals (transferred to this court by order of the Appellate Division, Second Department) from a judgment of the Supreme Court (Spindel, J.) ordering, *inter alia,* equitable distribution of the parties' marital property, entered September 8, 1989 in Orange County, upon a decision of the court.

This action for divorce based on cruel and inhuman treatment was commenced by plaintiff in August 1988. The trial was bifurcated. After plaintiff was granted a divorce there was

an ancillary trial to decide the issues of custody, visitation, maintenance, child support, equitable distribution, possession of the marital residence, health insurance, counsel fees and other items incidental to the divorce. This appeal is from various provisions of the ancillary judgment.

The judgment of Supreme Court should be modified by reversing so much thereof as limited defendant's visitation rights to four hours per month and as directed defendant to pay carrying charges on the marital residence for six months in the event of plaintiff's remarriage; defendant should pay such carrying charges unless plaintiff remarries and the matter should be remitted to Supreme Court to determine defendant's visitation rights.

Plaintiff and defendant were married in December 1977. Their only issue, a son, was born in April 1980. Plaintiff, a native of Ecuador where she had been employed as a high school teacher, came to this country in 1969. She then worked in a prototype lab at Timeplex Corporation until she quit her job at her husband's insistence shortly after their marriage. Defendant, a licensed engineer with a Master's degree, also worked at Timeplex Corporation until he voluntarily quit his job "to manage his investments" in December 1985. At that time, his job paid $56,000 a year plus benefits. He also had other employment opportunities at that time which he passed over.

It was plaintiff's contention that defendant quit his engineering job and wasted the next two years watching the stock market activity on his computer. Plaintiff claimed that during the marriage they acquired four income-producing properties and a large number of stocks, both from her husband's salary and from money given her by her family. Defendant claimed that all the assets and stock were purchased with his money. He first asserted that he lost all his stocks during the 1987 stock market crash. Evidence showed, however, that defendant was not telling the truth about his stock ownership. At trial he was forced to admit that he still had stocks valued at around $400,000 although it also appeared that he had run up debts of around $100,000.

Supreme Court awarded plaintiff custody of the child and limited defendant's visitation with the boy to four hours a month. However, defendant was ordered to pay $250 per week child support and $100 per week maintenance. Defendant was also directed to provide plaintiff and the child with medical and hospitalization insurance until plaintiff remarried or the

child reached 18 years of age. The court made various awards and orders as to the disposition of the marital property, including that defendant pay $5,000 to plaintiff's attorney as counsel fees. Defendant appealed and plaintiff cross-appealed from various provisions of the ancillary judgment.

Defendant's first contention, that plaintiff was improperly awarded custody of the child, is without merit. While plaintiff and the child lived in a number of places during the separation of the parties, the instability created thereby is only a factor to be considered in deciding the child's best interest, the controlling standard in awarding custody (see, Eschbach v Eschbach, 56 NY2d 167, 171; Matter of Noguera v Noguera, 129 AD2d 906). Significantly, the child stated a preference for living with his mother and there was evidence that defendant did not pay attention to the boy on occasions when they were together because of defendant's preoccupation with his girl-friend.

Defendant's argument that the limit of four hours a month for visitation with his son was an overly excessive restriction is persuasive. The record does not reveal the reasons for the severe restriction imposed on defendant's visitation rights and, as the restriction does not appear to be in the child's best interest, it is inappropriate. Expanded visitation would permit the desirable end of a more meaningful interaction between a child and his father (see, Shink v Shink, 140 AD2d 506; Paolini v Paolini, 100 AD2d 868). Accordingly, the matter should be remitted to Supreme Court to determine appropriate visitation.

Also without merit is defendant's contention that the awards for child support, maintenance and health insurance were excessive considering the needs of the child and his mother and the ability of defendant to pay. The respective financial condition of the parties is but one of many circumstances the court must consider in making support and maintenance awards (Matter of McBride v Luther, 124 AD2d 1056; Matter of Katzenberg v Katzenberg, 88 AD2d 914). Moreover, defendant's representation of the parties' finances is not correct. Defendant was shown to be better off financially than he claims and was shown to have wasted marital assets.

Defendant's argument that the distribution of marital assets by Supreme Court was inequitable also lacks merit. The record demonstrates that Supreme Court followed the applicable formula by distributing the marital assets as equally as possible (see, Miller v Miller, 128 AD2d 844; Ahrend v Ahrend, 123 AD2d 731). On this record, Supreme Court could properly

credit plaintiff's testimony and refuse to credit defendant's testimony based on his admitted untruths and evidence that he attempted to hide his stock assets from plaintiff and the court. The disposition of Supreme Court appears to be fair based on all the circumstances (see, Rodgers v Rodgers, 98 AD2d 386; Perri v Perri, 97 AD2d 399, appeal dismissed 61 NY2d 603).

There is merit, however, in defendant's contention that Supreme Court abused its discretion in directing defendant to pay the carrying charges on the marital residence and allowing plaintiff exclusive possession of the marital residence, even if she remarries, for a six-month period after the remarriage (with the requirement she pay rent). Pursuant to Domestic Relations Law § 248, the support obligation to a former spouse terminates upon remarriage. Defendant's assertion that the payment of carrying charges on the property is an improper award of support is correct. The remarriage terminates such obligation.

Defendant's claim that the award of counsel fees in the sum of $5,000 to plaintiff's attorney was an abuse of Supreme Court's discretion is not persuasive. Defendant, by his deception in hiding marital assets, unnecessarily complicated the case rendering it more complex. Accordingly, the award of counsel fees in the sum of $5,000 in these circumstances cannot be said to be an abuse of discretion (see, Stevens v Stevens, 107 AD2d 987).

We have considered the parties' other assertions of error and find them to be without merit.

Judgment modified, on the law and the facts, without costs, by reversing so much thereof as limited defendant's visitation rights to four hours each month and directed defendant to pay carrying charges on the marital residence for six months in the event of plaintiff's remarriage; defendant is directed to pay such carrying charges only until plaintiff remarries and matter is remitted to the Supreme Court to redetermine defendant's visitation rights; and, as so modified, affirmed. Mahoney, P. J., Casey, Weiss, Mikoll and Yesawich, Jr., JJ., concur.